### GEORGE W. DEATON *v.* S. BURCHART ET AL.

COUNTY. *Judicial districts. Recording deeds.*

> The statute dividing Panola County into two Circuit and Chancery Court districts (Acts 1880, p. 145) does not provide for recording deeds in the second district by establishing there distinct clerks' offices in which shall be kept all the books, dockets, and papers belonging to the courts, and all other dockets, records, and books required by law to be kept by circuit and chancery clerks.

APPEAL from the Circuit Court of Panola County.

Hon. SAM POWEL, Judge.

*Hall & Boothe*, for the appellant.

Separate records of deeds are not required by the statute (Acts 1880, p. 145) dividing Panola County into two court districts. Section 5 alone refers to record books, and it does not mention deed records. A matter of such general importance as changing the place for recording muniments of title cannot depend on implication. Distinct language is necessary to warrant so grave an alteration.

*Standifer & Stone*, for the appellees.

The object of the Act of Jan. 31, 1880, derived from the entire statute, is to divide Panola County into two districts as

distinct as two counties, and this controls its construction. Potter's Dwarris on Statutes, 178. Chancery clerks are required to keep deed books by law, and § 5 of this act requires the chancery clerk of the second district to keep all books required by law to be kept by such clerks. Deeds are to be recorded at Batesville when the property is situated in the second district.

CAMPBELL, J., delivered the opinion of the court.

The question which this record presents is, Was the delivery of a deed of trust to the clerk of the Chancery Court of Panola County, at his office in Sardis, to be recorded, on the fourteenth day of February, 1880, notice of the deed of trust which conveyed a crop to be grown in the Second Circuit and Chancery Court district of that county? By an act approved Jan. 31, 1880, and made to take effect from that date (Session Acts, p. 145), the county of Panola was divided into two districts, " for the purpose of holding two Circuit and Chancery Courts," as it declares in the first section, which makes the division and constitutes Sardis the seat of justice for the Circuit and Chancery Courts to be held in the first district and Batesville that for the second district, and fixes the time for holding the courts. The second section of the act declares the dividing line of the two districts. The third section provides for the institution of suits in said districts, and for a change of venue, and for the exercise of the jurisdiction of the Circuit and Chancery Courts of said districts, as if each was a county. The fourth section makes the sheriff of the county the officer to execute all process for the two districts. The fifth section provides for the keeping of an office by the clerks of the Circuit and Chancery Courts of the county, respectively, at Sardis and Batesville, " in which all books, dockets, papers and documents belonging to each of the courts of said district, shall be kept respectively, and all the dockets, records, books, &c., required by law to be kept by said clerks of said Circuit and Chancery Courts in each county in this State, shall be kept by said clerks at Sardis and Batesville for each of said districts respectively ; " and it then provides that the enrolment of a judgment or decree in the district in which it is obtained shall be a lien

co-extensive with the county. The sixth section relates to jurors for each district. The seventh makes crimes and misdemeanors cognizable only in the district in which they are committed. Section eight relates to the execution of process of the courts of the districts. Section nine makes it the duty of the Judge and Chancellor of the judicial district embracing Panola County to hold the courts in the two districts of the county. Section ten provides for appeals to the Supreme Court. Section eleven makes it the duty of the board of supervisors of the county to provide buildings or rooms for holding said courts and confining prisoners in the second district at Batesville, and to have erected there a court-house and jail. Section twelve provides for sessions of the board of supervisors alternately at Sardis and Batesville. Section thirteen makes it the duty of the Secretary of State to furnish the offices of the clerks at Batesville with reports, laws, &c. Section fourteen provides for a transfer of certain suits pending in the first district to the second. Section fifteen declares that the Circuit and Chancery Courts of the two districts shall have jurisdiction in the districts, " as if in two counties." Section sixteen makes the act take effect from its passage.

It is thus made apparent that the paramount object of the act was, as it expressly declares, to divide the county, for the administration of justice through the Circuit and Chancery Courts. Every section of the act, except the last, has direct reference to this purpose and its accomplishment. The courts and their business are expressly provided for, in explicit terms. Not a word is contained in the act with respect to conveyances of property, or deeds of trust or mortgages, or their being recorded. No mention is made of recording muniments of title to property or incumbrances. The general law on this subject was unaffected, except as changed by this act; and unless the fifth section of this act had the effect to provide for the recording of all instruments at Batesville, which would have been recordable there if the second district had been made a separate county for all purposes, no change was made by the act as to recording instruments required to be recorded. The second district of Panola County was not made a separate county, and it was separated from the first district only for

certain purposes, and so far as is provided for by the act mentioned. The authority for recording instruments at Batesville is claimed to arise from the fifth section of the act, and, if not found there, it certainly does not exist. That section declares that the clerks of the Circuit and Chancery Courts of the county shall have offices at Batesville, " in which all books, dockets, papers and documents belonging to each of the courts of said district, shall be kept respectively, *and all the dockets, records, books, &c., required by law to be kept by said clerks of said Circuit and Chancery Courts in each county in this State, shall be kept by said clerks at Sardis and Batesville for each of said districts respectively,*" &c. It is urged that the language in italics provides for recording instruments in the two districts, as in separate counties. The argument is that the preceding part of the section provides for the books, dockets, papers, and documents belonging to each of the courts, and that the further requirement had reference to all other records and books required by law to be kept by clerks of the Circuit and Chancery Courts in each county, and that this embraces books for recording instruments required to be recorded. It may be admitted that the language is broad enough to embrace books for recording instruments, but it is inconceivable that such books were in the legislative mind in employing the language used. The association would seem to exclude this idea. The Circuit and Chancery Courts, and their jurisdiction and process and proceedings, were uppermost in the mind of the legislators. Everything pertaining to them is expressly provided for, and it cannot be supposed that the important matter of recording instruments was thought of, and was intended to be regulated, and yet was not mentioned, but was purposely left to be inferred from the general and vague requirement that, all books required by law to be kept, &c., should be kept at Sardis and Batesville for each of said districts respectively. Before the passage of this act instruments were recordable at Sardis only. Unless that was changed by express enactment or clear implication, the former law remains in force. Repeal by implication is not favored, because it is justly assumed that, if the legislature intended a change in the law, it would have said so in unmistakable terms. It is incredible that careful attention

was given to everything pertaining to the Circuit and Chancery Courts, and the sessions of the board of supervisors, and that recording instruments was designedly regulated as to both districts by a sweeping requirement as to keeping books in the offices, without further mention. The proposition that the two districts were made as two counties for recording instruments rests on implication and inference merely. The language used may be accounted for, by assuming the purpose of the legislature to insure the keeping of all such books as pertained to the courts of the counties, and other books besides those for recording instruments. The word " dockets " is either a mere repetition of the dockets of the courts, or has relation to the treasurer's docket required to be kept. Then as the board of supervisors was to sit alternately at Sardis and Batesville, and have jurisdiction throughout the county, when at either place, it was necessary to have a minute book, warrant book, account book of officers, &c. The question is the legislative intent to be derived from the act, and applying familiar rules for the interpretation of statutes, we have reached the conclusion that the act did not affect the law for recording instruments.

*Judgment reversed and cause remanded.*